IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENNIS McGINTY, PT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:18-cv-359-S |
| | § | |
| ALEX AZAR, Secretary, | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HEALTH AND HUMAN SERVICES, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Karen Gren Scholer. *See* Dkt. No. 31.

In a dispute centered on the revocation of Plaintiff's enrollment and billing privileges under Medicare Part B, Plaintiff Dennis McGinty and Defendant Alex Azar, the Secretary of the United States Department of Health and Human Services (the "Secretary") have each filed a Motion for Summary Judgment. *See* Dkt. Nos. 18 & 21.

The Court should deny Plaintiff's Motion for Summary Judgment, grant the Secretary's Motion for Summary Judgment, and dismiss all claims with prejudice.

**Background**

Plaintiff Dennis McGinty, a physical therapist licensed in Texas, previously participated in the Medicare Part B program. *See* Dkt. No. 19 at 2. On March 24, 2014, Plaintiff submitted a revalidation application. *See* Dkt. No. 16, Administrative Record

("AR") at 753-54. Novitas Solutions, Inc. ("Novitas") informed Plaintiff on July 8, 2014, that he had been revalidated. *See* AR at 769. But, two years later on June 18, 2016, his enrollment and billing privileges were revoked for the failure to report a 2005 deferred adjudication and guilty plea in his 2014 revalidation application. *See* Dkt. No. 23 at 4.

I.    The Medicare Framework

Medicare is a national health insurance program initiated in 1966 to provide health insurance for people aged 65 and older, or any individual with a disability status, end stage renal disease, or amyotrophic lateral sclerosis (Lou Gehrig's disease). *See* 42 U.S.C. § 1395 *et seq.*; *Medicare*, SOCIAL SECURITY MEDICARE BENEFITS (July 2018), https://www.ssa.gov/benefits/medicare/. Medicare has four parts: Medicare Part A, which "helps pay for inpatient care in a hospital or skilled nursing facility"; Medicare Part B, which "pays for services from doctors and other health care providers, outpatient care, home health care, durable medical equipment, and some preventative services"; Medicare Part C or "Medicare Advantage," in which patients can chose plans with the coverage offered in Plans A, B, and D; and finally Medicare Part D, which helps cover the cost of prescription drugs. *See id.*

The Centers for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services, administers Medicare. *See* CENTERS FOR MEDICARE & MEDICAID SERVICES (April 10, 2019), https://www.cms.gov/Medicare/Medicare.html. Since Medicare's inception, private health care insurers called Medicare Administrative Contractors ("MAC") have processed medical claims for Medicare beneficiaries. *See id.*

2

Under 42 C.F.R. § 424.505, medical practitioners must be enrolled into the Medicare program and have billing privileges in order to be eligible to receive payment for services rendered to Medicare-eligible beneficiaries. *See* 42 C.F.R. § 424.505. "To maintain Medicare billing privileges, a provider or supplier ... must resubmit and recertify the accuracy of its enrollment information every 5 years."42 C.F.R. § 424.515; MEDICARE ENROLLMENT FOR PHYSICIANS, NPP, AND OTHER PART B SUPPLIERS (April 10, 2019), http://www.cms.gov/.../Medicare.../medenroll_physother_factsheet_icn903768. pdf. "The application requires the physician to list any 'final adverse actions' including any felony convictions." *Ahmed v. Sebelius*, 710 F. Supp. 2d 167, 170 (D. Mass. 2010).

Here, Novitas was an Medicare Administrative Contractor, and Plaintiff was a physical therapist that participated in the Medicare Part B program. *See* Dkt No. 19 at 1. Plaintiff would bill Medicare as the insurance plan for patient services. *See id*.

## II.    The Deferred Adjudication and Revalidation Application

Prior to the events at hand, in May 2005, Plaintiff had "pled guilty to sexual contact of the breast and genitals of a 15 year old [sic] girl, a second degree felony of Indecency with a Child with Contact, in violation of Section 21.11(a)(1) of the Texas Penal Code," but failed to disclose this to his Medicare Administrative Contractor, Novitas Solutions, Inc. Dkt. No. 23 at 4. The District Court of Collin County, Texas had accepted Plaintiff's guilty plea and elected to enter a deferred adjudication, ordering Plaintiff to "serve 10 years of community service, pay a fine, and register as a sex offender." *Id.*

Under Texas law, "if in the judge's opinion the best interest of society and the

3

defendant will be served, the judge may, after receiving a plea of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt and place the defendant on deferred adjudication community supervision." TEX. CODE OF CRIM. PROC. § 42A.101(a). If the defendant violates a condition of community supervision, the court may then proceed to adjudicate guilt and assess a punishment. *See United States v. Mills*, 843 F.3d 210, 214 (5th Cir. 2016). But, if the defendant "successfully completes the community supervision term, the case, for most legal purposes, 'disappears.'" *Id.* (quoting *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004)).

"On March 24, 2014, Plaintiff submitted a Medicare revalidation application, which required him to report any 'final adverse legal actions.'" AR at 17. Plaintiff failed to report the 2005 deferred adjudication and guilty plea and "certified its contents to be true and complete." *Id.* "[T]he parties do not dispute that [Plaintiff] was required to report ... any 'final adverse action.'" *Id.*

On May 20, 2016, Novitas sent Plaintiff a notice that it would be revoking Plaintiff's Medicare enrollment on June 18, 2016, under 42 C.F.R § 424.535(a)(4) for the "fail[ure] to report [his] March 22, 2005[,] felony conviction for Indecency with Child Sexual Contact," noting that "[a] felony conviction is a final adverse action, as defined by 42 C.F.R. § 424.502." AR at 506.

## III.   Novitas's Reconsideration

On July 18, 2016, Plaintiff requested a reconsideration, arguing that "it was an

error to determine he was 'convicted' because of the deferred adjudication." Dkt No. 3. Novitas issued a decision on August 29, 2016, sustaining the revocation. *See* AR at 763. In its decision, Novitas noted that guilty pleas and deferred adjudications are "convictions" because they are included in the definition of conviction in 42 C.F.R. § 1001.2 that 42 C.F.R. § 424.535(a)(3)(i) cites to. AR at 761-62. As such, Plaintiff was compelled to report his deferred adjudication during his revalidation, and the failure to do so was grounds for his billing revocation under 42 C.F.R. § 424.353(a)(4) for providing false or misleading information. *See* AR at 767.

IV.    Administrative Law Judge Review

On October 27, 2016, Plaintiff requested that an Administrative Law Judge ("ALJ") review Novatis' determination. *See* Dkt. No. 19 at 4. Plaintiff sought review on three issues, arguing that (1) the revision of 42 C.F.R. § 424.535(a)(3) – which incorporates 42 C.F.R. §1001.2 and its inclusion of guilty pleas and deferred adjudications as convictions – is invalid because it contradicts Congress's "unambiguously expressed intent and ignores the definition of conviction under State law"; (2) it was impermissible to retroactively apply the version of 42 C.F.R. § 424.535(a)(3) that only became effective on February 3, 2015; and (3) that, even if the deferred adjudication was a conviction in Texas, it occurred more than ten years before the June 18, 2016, revocation. AR at 9-10.

The ALJ granted summary judgment in favor of CMS. *See* AR at 12.

As to the first argument, the ALJ held that Congress defined the term "convicted" in the Social Security Act in 42 U.S.C. § 1320a-7(i) to include both guilty

5

pleas and deferred adjudications in "Federal, State, or local court." AR at 10-11.

As to the second argument, the ALJ held that, even if he were to apply the version of 42 C.F.R. § 424.535(a)(3) in effect during Plaintiff's March 24, 2014, submission that did not include the chain link to the guilty plea and deferred adjudication under 42 C.F.R. § 1001.2, the 2013 version of 42 C.F.R. § 424.535(a)(3) still included guilty pleas and adjudicated pretrial diversions as convictions. *See* AR at 12. As such, Novitas' revocation under 42 C.F.R. § 424.353(a)(4) for providing false or misleading information was valid. *See id.*

Finally, as to Plaintiff's third argument, the ALJ reasoned that the deferred adjudication was within the 10-year window from 2005 because the relevant date would be his March 24, 2014, submission not the June18, 2016, revalidation decision. *See id.*

V.    Departmental Appeals Board Appeal

Plaintiff appealed the ALJ's decision to the Department of Health and Human Services' Departmental Appeals Board (the "Agency"). *See* AR at 15-29. The Agency upheld the ALJ's decision. *See id.*

Plaintiff challenged the ALJ's decision on three grounds, arguing (1) that the conclusion that Plaintiff was "convicted" of a felony offense for purposes of his Medicare enrollment violates the plain language of 42 U.S.C. § 1935cc(b)(2)(D); (2) that Plaintiff was denied due process because Novitas retroactively applied section 424.535(a)(3)(i) (2015) and the ALJ "based his decision of alternate legal theories not set forth in Novitas' initial determination"; and (3) that, "[a]ssuming arguendo that [Plaintiff] was

'convicted,' the conviction occurred more than [ten] years prior to the June 18, 2016 [sic] revocation and, thus is not a final adverse action." AR at 19.

The Agency held that the "CMS had a valid legal basis to revoke [Plaintiff's] Medicare enrollment ... based on section [424.535](a)(4)"; that the revocation was consistent with the language of 42 U.S.C. 13955cc(b)(2)(D); and that Plaintiff received sufficient notice and opportunity to present his legal arguments through the administrative appeal. AR at 20-29.

VI.    Plaintiff's Action in this Court

Plaintiff now seeks judicial review of the Agency's final decision and has filed a Motion for Summary Judgment. *See* Dkt. No. 18. The Secretary then filed a Motion for Summary Judgment. *See* Dkt. No. 21.

**Legal Standards**

I.    Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of

the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.") (internal quotation marks and footnotes omitted). The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at

511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his or her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.") (internal quotation marks and footnote omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986). The"beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"When parties file cross-motions for summary judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (footnote and internal quotation marks omitted).

II.    <u>Judicial Review of Agency Decisions</u>

A Medicare provider or supplier whose Medicare privileges have been revoked can pursue a judicial appeal of the Secretary's final decision. *See* 42 U.S.C. § 405(g). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). And "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.*

Judicial review of the Secretary's decision is limited to two inquiries: (1) whether the Secretary applied the correct legal standards and (2) whether there is substantial evidence in the record to support the Secretary's decision. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (citing *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992)); *Maxmed Healthcare, Inc., v. Burwell*, 152 F. Supp. 3d 619, 625 (W.D. Tex. 2016). When considering whether the Secretary applied correct legal standards, courts are required to give "substantial deference" to her interpretation of Medicare's regulations. *Maxmed Healthcare, Inc.*, 152 F. Supp. 3d at 625.

When considering whether substantial evidence exists to support the Secretary's decision, courts must be mindful that substantial evidence is more than a mere scintilla. *See id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*,

402 U.S. 389, 401 (1971), and *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court "'may neither reweigh the evidence in the record nor substitute [its own] judgment for the Secretary's.'" *Id.* (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)). Ultimately, "'[i]f supported by substantial evidence, the decision of the Secretary is conclusive and must be affirmed.'" *Sid Peterson Mem'l Hosp. v. Thompson,* 274 F.3d 301, 311 (5th Cir. 2001) (quoting *Richardson,* 402 U.S. at 391).

In determining whether an agency's interpretation of a statute should be accepted, we apply the *Chevron* test. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694 (1984). The traditional two steps of analysis under *Chevron* are a (1) statutory ambiguity and (2) reasonable agency interpretation. *Id.*

> First, the court determines whether the statutory language at issue is ambiguous. *Id.* "If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* To determine whether Congress' intent is clear, the court applies traditional tools of statutory construction. *Nevada v. U.S. Dept. of Labor*, 218 F. Supp. 3d 520, 528 (E.D. Tex. 2016). The court will consider the specific language at issue, the context of the language, and the context of the statute as a whole. *Id.* Language is not unambiguous simply because the court could interpret the language on its own. *City of Arlington v. F.C.C.*, 569 U.S. 290, 304-05 (2013) ("We have cautioned that judges ought to refrain from substituting their own interstitial lawmaking for that of an agency.").
>
> If the disputed language is ambiguous, the second question is whether the agency's interpretation of the language is reasonable. *Chevron*, 467 U.S. at 843. The court will not reject an agency interpretation simply because it disagrees with the interpretation provided. *City of Arlington*, 569 U.S. at 318. Instead, the court considers the interpretation against

> the statute's objectives and other provisions. *Barnhart v. Walton*, 535 U.S. 212, 219 (2002). So long as the agency interpretation is a rational policy choice and does not conflict with the statute's other provisions and overall objectives, the agency interpretation stands and the court defers. *Id.*

*Kimberly Shipper, P.A. v. Price*, No. 617CV00253ADAJCM, 2019 WL 1029118, at *3 (W.D. Tex. Feb. 11, 2019).

## Analysis

The Department of Health and Human Services Departmental Appeals Board decision focused on two main areas: Whether (1) the CMS had a legal basis to revoke Plaintiff's Medicare enrollment and billing privileges under (1) 42 C.F.R. § 424.535(a)(4); and (2) the decision to revoke Plaintiff's enrollment violated the plain language of 42 U.S.C. 13955cc(b)(2)(D). AR at 20-28. Pertinent to both inquiries, is the question of whether the revocation was valid based on the ten-year reporting provision in 42 C.F.R. § 424.535(a)(3). AR at 28. Dovetailed in the second inquiry, is the issue of due process implications of a retroactive application of a 2015 revision of 42 C.F.R. § 424.535(a)(3)(i). AR at 20-28.

The Agency held that the "CMS had a valid legal basis to revoke [Plaintiff's] Medicare enrollment ... based on section [424.535](a)(4)"; that the revocation was consistent with the language of 42 U.S.C. 13955cc(b)(2)(D); and that Plaintiff received sufficient notice and opportunity to present his legal arguments through the administrative appeal. AR at 20-29.

The undersigned finds that because the decision to revoke Plaintiff's Medicare billing privileges was based on the correct legal standards and "'substantial evidence,

13

the decision of the Secretary is conclusive and must be affirmed.'" *Sid Peterson Mem'l Hosp.*, 274 F.3d at 311 (quoting *Richardson,* 402 U.S. at 391). Accordingly, Plaintiff's Motion for Summary Judgment must be denied, and Defendant's motion must be granted.

I.    Whether the revocation was improper based on the 10-year window.

The undersigned first turns to the threshold issue of whether the revocation was improper based on the 10-year reporting requirements. For ease of reference, the pertinent dates are as follows: On May 22, 2005, Plaintiff pled guilty to the state charges and received a deferred adjudication. *See* AR at 772-75. On March 24, 2014, Plaintiff submitted a revalidation application. *See* AR at 751. On May 20, 2016, Novitas issued a notice to Plaintiff informing him that his billing privileges would be revoked on June 18, 2016. *See* AR at 505-07.

In challenging the underlying decision, Plaintiff argued, that even if he was 'convicted' as a result of the deferred adjudication in 2005, the order cannot be properly considered as a reason for revocation because the June 18, 2016, decision was made more than 10 years after the order. *See* AR at 27.

The Agency held that, because the revocation was based on a violation of Section 424.535(a)(4) for certifying misleading or false information as true, "the relevant type of 'final adverse action' at issue here ... is a conviction 'within the last 10 years *preceding enrollment, revalidation, or re-enrollment.*'" AR at 28 (emphasis added). Accordingly, "the date that [Plaintiff] filed his revalidation application, March 24, 2014,

is the date that controls, not [the] date that Novitas revoked his Medicare enrollment, June 18, 2016." *Id*. Since Plaintiff's guilty plea and deferred adjudication occurred in 2005, they occurred within the ten years preceding the revalidation, and "Novitas' July 2014 notification that the application had been approved." *Id*.

Here, Plaintiff shifts the focus on this issue to 42 C.F.R. § 424.530(a)(3) – instead of 42 C.F.R. § 424.535(a)(4) – to argue that there was no basis for revocation because, in December 2014, the CMS amended § 424.530(a)(3)'s "original language of 'within the 10 years preceding enrollment or revalidation of enrollment' ... to 'within the preceding 10 years.'" Dkt. No. 19 at 15. Accordingly, he argues, the June 8, 2016, date should control. *See id*. at 16. Since the 2005 deferred adjudication and guilty plea fell outside the 10-year reportable window, Plaintiff argues that his revocation was improper. *See id*.

Defendant avers that the "changes made to 42 C.F.R. § 424.535(a)(3) in late 2014 .... are irrelevant[,]" because the agency "did not revoke [Plaintiff's] enrollment due to the existence of a conviction within the preceding 10 years of June 18, 2016," – instead, "the revocation was based on [Plaintiff's] certification of a false application, which occurred on March 24, 2014[,] when the application was submitted, i.e., within 10 years of [Plaintiff's] guilty plea and deferred adjudication in March 2005." Dkt. No. 28.

Based on the regulation in place at the time of Plaintiff's revalidation submission looking to "10 years preceding enrollment or revalidation of enrollment," and the Agency's revocation under Section § 424.535(a)(4) for the act of submitting

15

false or misleading information as true, the undersigned concludes that there is substantial evidence in the record to support the Agency's finding that the March 24, 2014, date controls and that the revalidation submission falls within ten-year-window. *See* 42 C.F.R. § 424.535(a)(4). The Agency's finding that the revalidation submission date was the controlling date under a 42 C.F.R. § 424.535(a)(4) revocation, is supported by substantial evidence and is conclusive. *See First Houston Health Care, L.L.C. v. Burwell*, Civ. A. No. H-14-3055, 2014 WL 7192315, at *4 (S.D. Tex. Dec. 16, 2014).

II.    Revocation under 42 C.F.R. § 424.535(a)(4) for certifying as misleading or false <u>information as true</u>.

Turning to the revocation under 42 C.F.R. § 424.535(a)(4), the Agency held that Plaintiff "was required to report the 2005 guilty plea and deferred adjudication on his March 24, 2014 Medicare revalidation application" and that his failure to do so gave the CMS a "valid legal basis to revoke his Medicare enrollment pursuant to 42 C.F.R. § 424.535(a)(3)." AR at 22. The panel noted that "the parties did not dispute that [Plaintiff] was required to report on his March 2014 Medicare revalidation application any 'final adverse action'" and that they both agree that Plaintiff "did not report any final adverse action on his application that he certified to be true and complete." AR at 20.

The panel concluded that Plaintiff failed to disclosure reportable information under both the 2013 and 2015 revisions of 42 C.F.R. § 424.535(a)(3). AR at 22. The 2013 version mandated that

> [t]he provider, supplier, or any owner of the provider or supplier, within
> the 10 years preceding enrollment or revalidation of enrollment, was

16

> convicted of a Federal or State felony offense that CMS has determined to be detrimental to the best interests of the program and its beneficiaries.
>
>> (i) Offenses include—
>>
>>> (A) Felony crimes against persons, such as murder, rape, assault, and other similar crimes for which the individual was convicted, *including guilty pleas and adjudicated pretrial diversions.*

42 C.F.R. § 424.535(a)(3)(i) (emphasis added). The panel reasoned, that since Plaintiff entered a guilty plea to the felony of indecent contact with a child, that conduct satisfied Section 424.535(a)(3)(i)(A) as a conviction that Plaintiff failed to report. *See* AR at 22. And, since there is no "material legal distinction between a 'deferred adjudication' and an 'adjudicated pretrial diversion,'" the panel concluded that Plaintiff's deferred adjudication is an "alternative basis for finding [Plaintiff] 'convicted.'" *Id.*

As to the 2015 revision of Section 424.535(a)(3)(i), the regulation mandated that

> [t]he provider, supplier, or any owner or managing employee of the provider or supplier was, within the preceding 10 years, convicted (as that term is defined in 42 C.F.R. § 1001.2) of a Federal or State felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries.

42 C.F.R. § 424.535(a)(3)(i). Further, 42 C.F.R. § 1001.2 partly defined "convicted" as a circumstance where

> (c) A Federal, State or local court has accepted a *plea of guilty* or nolo contendere by an individual or entity; or
> (d) An individual or entity has entered into participation in a first offender, *deferred adjudication* or other program or arrangement where judgment of conviction has been withheld.

42 C.F.R. § 1001.2 (emphasis added).

17

For the same reasons, the panel held that Plaintiff was convicted under the 2015 revision for his guilty plea and deferred adjudication and that his revocation was, therefore, valid under Section 424.353)(a)(4) for certifying that his revalidation application was truthful despite his failure to include the earlier conviction. *See* AR at 21.

In his Motion for Summary Judgment, Plaintiff argues that the panel's finding that he certified misleading or false information as true in violation of 42 C.F.R. § 424.535(a)(4) was erroneous because there was no conviction within ten years prior to the June 18, 2016 revocation. Dkt. No. 19 at 16. "The court's Order of Deferred Adjudication was issued on May 22, 2005, over one year *before* June 2006." Dkt. No. 26 at 7. Since there was "no conviction [in the ten-year-window], Plaintiff did not certify as true misleading or false information in violation of 42 C.F.R. § 424.535(a)(4)." *Id*.

Defendant argues that the revalidation application "did not merely require [Plaintiff] to report only convictions' as defined by state law ... [i]nstead, the application asked a broader question about any 'final averse actions,' which was defined by regulation at the time [Plaintiff] submitted his application to include 'guilty pleas and adjudicated pretrial diversions.'" Dkt. No. 28 at 2-3 (internal citations omitted). Because of this guilty plea, Defendant argues that "the Agency was on firm ground in concluding that [Plaintiff] was 'obligated to report this 'final adverse action' on [his] application,' but failed to do so." *Id*. "[T]he Agency was quite clear that it was not purporting to revoke [Plaintiff's] enrollment under section 424.353(a)(3) 'for the

18

conviction itself" (which by the time of the revocation was more than 10 years old), but rather under the separate provision at subsection (a)(4) relating to the provision of false or misleading information." *Id*. at 3-4.

Plaintiff's efforts to terminate the debate on Section 424.535(a)(4) by claiming that the 2005 order falls outside the 10-year window are misplaced. As the undersigned addressed above, the Agency's finding that the revalidation submission date is the controlling date under a Section 424.535(a)(4) revocation was supported by substantial evidence and is conclusive. The application requires the provider to list any "final adverse actions" including any felony convictions. *Ahmed,* 710 F. Supp. 2d at 170. Plaintiff "pled guilty to sexual contact of the breast and genitals of a 15 year old [sic] girl, a second degree felony of Indecency with a Child with Contact, in violation of Section 21.11(a)(1) of the Texas Penal Code" but failed to disclose this to his Medicare Administrative Contractor, Novitas Solutions, Inc. Dkt. No. 23 at 4. As the Agency noted in its decision, a guilty plea was a reportable issue under both the 2013 and 2015 revisions of Section 424.535(a)(3). *See* AR at 22. Since it is undisputed that Plaintiff "did not report any final adverse action on his application that he certified to be true and complete," there is substantial evidence to show that the Agency was on solid ground in revoking Plaintiff's billing privileges for violating Section 424.535(a)(4). AR at 20. A reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support the Agency's conclusion. *See Ahmed v. Sebelius*, 710 F. Supp. 2d 167, 173 (D. Mass. 2010).

III.    The definition of 'convicted' and the interplay between 42 C.F.R. § 424.535(a)(3) <u>and 42 U.S.C. § 1395cc(b)(2)(D).</u>

Plaintiff next argues that the revocation was invalid because it violated the plain language of 42 U.S.C. § 1395cc(b)(2)(D). *See* AR at 22. Appealing the Administrative Law Judge's decision, Plaintiff raised three issues, arguing that (1) "a construction of the definition of 'convicted' in section 424.535(a)(3) [that] include[s] a guilty plea and deferred adjudication in a Texas criminal proceeding 'violates the plain language of' 42 U.S.C. § 1395cc(b)(2)(D)'"; (2) that the "ALJ erred in relying on the definition of 'convicted' in 42 U.S.C. § 1320a-7(i) because that section 'is a different statute entirely' and 'is at odds with and contrary to the provisions of 42 U.S.C. 1395cc(b)(2)(D)'"; and (3) that the "ALJ erred in refusing to determine that 42 C.F.R. § 424.535(a)(3), as amended in 2015 to incorporate the definition of 'convicted' in the program exclusion statute and 42 C.F.R. § 1001.2, is invalid because it violates the plain language of 42 U.S.C. § 1395cc(b)(2)(D)." *Id.*

The Agency held that "the decision to revoke [Plaintiff's] Medicare enrolment and billing privileges is consistent with the language of 42 U.S.C. § 1395cc(b)(2)(D)." AR at 25. It reasoned that

> the Board has consistently held that federal law – not state law – governs whether a supplier has been "convicted" of an offense, as that term is used for the purposes of Medicare enrollment and other federal laws designed to protect the Medicare program and its beneficiaries. *E.g., Kimberly Shipper, P.A.*, DAB No. 2804, at 5-8 (2017) (guilty plea to Texas felony aggravated assault charge, receipt and entry of the plea by the District Court of Harris County, Texas, and Court's Order of Deferred Adjudication, each qualified as a "conviction" under Medicare enrollment regulations even if Texas law did not recognize the deferred adjudications as a conviction), *appeal docketed*, No. 6:17-cv-00253-RP-JCM (W.D.

20

Texas. Sept. 22, 2017); *John Hartman, D.O.*, DAB No. 2564, at 3 (2014) (guilty plea to Missouri felony assault charge was a "conviction" under section 424.525(a)(3) even though Missouri law did not recognize [that] a conviction occurred), citing *Lorrie Laurel,* [*P.T.*], DAB No. 2524 (2013) (guilty plea to Florida second-degree felony financial crime was a conviction under section 424.525(a)(3)(i) notwithstanding the provisions of state law).

AR at 23. And the Board had previously addressed the question of whether "the plain language of [] 42 U.S.C. § 1395cc(b)(2)(D) compels the Secretary to use the definition of 'convicted' under state law where a revocation is based on the outcome of a state criminal preceding." AR at 23. Since the "wording of the statute ... 'links the phrase 'under Federal or State law' to the noun immediately preceding it – 'felony,' not to the word 'convicted,'" the Agency noted that "the Secretary has understood that phrase to refer to the predicate offense for a revocation action based on a conviction, that is, that the offense must constitute a felony under either state law or federal law." AR 23-24 (quoting *Shipper* at 7). The Agency found that such a reading was "consistent with the wording of 42 U.S.C. § 1395cc(b)(2)(D) and the absence in that section of an express definition of 'convicted' or a requirement to use a state law's definition of the term in evaluating whether to revoke a supplier's enrollment and billing privileges." AR at 24.

As to the reliance on the definition of 'convicted' in 42 U.S.C. § 1320a-7(i), the Agency rejected Plaintiff's contention that the definition of 'convicted' in 42 U.S.C. § 1320a-7 is included in an entirely different statute and is "inconsistent with the legislation governing provider and supplier enrollment in Medicare." AR at 24. (For clarity, 42 U.S.C. § 1320a-7 is the federal health care program exclusion statute, and 42 U.S.C. § 1395cc(b) is the revocation statute.) The Agency reasoned that, since the

21

overarching objective of the exclusion statute of "excluding certain individuals from participating in all federal health care programs under 42 U.S.C. 1320a-7" was akin to the central purpose of the revocation and enrollment statute of "protecting Medicare beneficiaries and Trust Funds from fraudulent, untrustworthy[,] and abusive providers and suppliers[,]" even though "Congress did not define the term 'convicted' in 42 U.S.C. 1395cc(b)(2)(D), the Secretary properly exercised the authority to define the term by regulation consistent with the definition of 'convicted' in the exclusion statute." *Id*.

In his Motion for Summary Judgment, Plaintiff argues that the Agency erred in its decision because "it is well settled that a deferred adjudication is *not* a conviction under Texas law" and that, since a "[p]roper statutory construction of 42 U.S.C. § 1395cc(b)(2)(D) explicitly requires that a provider be 'convicted of a felony under Federal and State law[,]' ... the plain meaning of the statutory language does not support" an adoption of the definition of "convicted" under 42 C.F.R. § 1001.2 that includes deferred adjudications. Dkt. No. 19 at 7.

First, as to the 2013 revision of 42 C.F.R. § 424.353(a)(3), Plaintiff argues that he was not convicted of a crime under Texas law, because it is "well settled that a deferred adjudication is not a conviction under Texas law" because a deferred adjudication involves "no finding or verdict of guilt," and "[a] conviction always involves an adjudication of guilt." *Id*. at 10. Moreover, he argues that he was not convicted under any of the felony categories in the 2013 version of Section 424.525(a)(3)(i) and that, under the plain meaning of 42 U.S.C. § 1395cc(b)(2)(D), "the predicate-basis for revocation is a felony conviction either under Federal *or* State law."

Dkt. No. 19 at 7. Because "case law precedent has established that deferred adjudications are not a conviction under Texas law, an interpretation of 42 C.F.R. § 424.353(a)(3) that [a] deferred adjudication is a conviction violates the plain language of the statute." *Id.* at 9. As such, Plaintiff contends that 42 C.F.R. § 1001.2's definition of "convicted" "is invalid because it contradicts Congress' unambiguous expressed intent." *Id.* Plaintiff contends that, although the "exclusion statute actually contains a federal definition of conviction," the revocation statute does not and Defendant cannot "superimpose" or "bootstrap the federal definition" because it directly conflicts with the plain language of 42 U.S.C. § 1395cc(b)(2)(D)" and "eliminates the definition of conviction under state law." *Id.* 9-10. Here, Plaintiff uses the term federal definition of 'conviction' to denote one that includes deferred adjudication, as in 42 U.S.C. § 1320a-7(i).

Second, as to the the impact of the 2015 revision of 42 C.F.R. § 424.353(a)(3), despite the CMS's official comments that the revision of 42 C.F.R. § 424.353(a)(3) in 2015 was to clarify that the term "convicted" had the same definition as the one set forth in 42 C.F.R. § 1001.2, Plaintiff argues that the amendment is instead "an acknowledgment that the regulation did *not* previously include a federal definition of 'convicted.'" AR at 11. And, according to Plaintiff, the amendment is "at odds with and violates the plain languages of the Medicare statute which unambiguously states that the predicate-basis for revocation is a felony conviction either under Federal *or* State law." *Id.* at 14. While Plaintiff concedes that courts have ruled that federal law, not

state law, is used to determine what constitutes a conviction, "it has done so *only* in the context of exclusion cases." *Id.* at 13. He argues that the Agency has wrongly decided the issues that federal law control the definition of conviction in cases such as *Lorrie Laurel, P.T.*, DAB Decision No. 2524 (App. Div. July 11, 2013), because – even if the regulation "makes no reference to State law ... or [mandates] that revocation is authorized for a State law only where a provider was convicted under State law" – the Medicare statute plainly requires that the provider be "convicted of a felony under Federal or State law," AR at 13. Accordingly, "the definition of 'convicted' under 42 C.F.R. § 1001.2 is invalid because it is not a clarification, but rather directly contradicts Congress' unambiguously expressed intent." *Id.*

The Secretary argues that the Agency's determination that a deferred adjudication of a guilty plea is a conviction is a permissible construction of 42 U.S.C. § 1395cc(b)(2)(D) because federal law defines "convicted" in 42 U.S.C. § 1395cc(b)(2)(D) and, even if state law controls the definition, Plaintiff's particular deferred adjudication is considered a conviction under Texas law under *United States v. Ary*, 892 F.3d 787, 790 (5th Cir. 2018) and Texas Penal Code § 12.42(g)(1) . Dkt. No. 23 at 11-16.

The court in *Kimberly Shipper, P.A. v. Price* recently addressed this exact issue on the definition of "conviction" and interplay of 42 U.S.C. § 1395cc(b)(2)(D). *See* No. 617CV00253ADAJCM, 2019 WL 1029118, at *4–*8 (W.D. Tex. Feb. 11, 2019). In *Shipper*, the plaintiff challenged the Secretary's interpretation of "convicted" as used

in 42 U.S.C. § 1395cc(b)(2)(D), arguing that the term "convicted" does "not include deferred adjudication and, thus, she could not be terminated as a Medicare services provider for a guilty plea subject to deferred adjudication under Texas law." *Shipper, P.A.*, 2019 WL 1029118, at *3. Since "the Secretary's interpretation must be upheld if (1) supported by substantial evidence and (2) based on the proper legal standard" and the plaintiff was challenging the Secretary's legal interpretation, the dispute was "[w]hether the Secretary's interpretation of § 1395cc" controlled. *Id.* As such, it employed the traditional two-part test in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to evaluate the Secretary's interpretation of "conviction."

The *Shipper* court noted that:

> As of 2015, this analysis features four distinct steps. *See King v. Burwell*, 135 S. Ct. 2480, 2488-89 (2015). First, the court considers whether the agency's interpretation affects an issue of "deep economic and political significance." *Id.* at 2489. Second, the court considers whether the agency issued the interpretation via a formal ruling due Chevron deference. *See United States v. Mead*, 533 U.S. 218, 230 (2001). Neither of these two steps are disputed here and would not affect the result if they were. *See Fournier v. Sebelius*, 718 F.3d 1110, 1119 (9th Cir. 2013); *Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660, 687 (N.D. Tex. 2016); *Chamber of Commerce v. Dept. of Labor*, 885 F.3d 360, 387 (5th Cir. 2018). The final two steps are the traditional two points of analysis identified in Chevron.

*Id.*

A.    <u>*Chevron* Step One</u>

The *Shipper* court noted that the first step in the analysis is

to determine whether the statutory language at issue is ambiguous. *Chevron*, 467 U.S. at 842-43. Language is ambiguous when susceptible

> to more than one reasonable interpretation. [*Nevada v. United States Dep't of Labor*, 218 F. Supp. 3d 520, 528 (E.D. Tex. 2016)]. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

*Shipper, P.A.*, 2019 WL 1029118, at *5. As Plaintiff has argued here, the *Shipper* plaintiff argued that the "statute 'unambiguously' defers to Texas law to control whether [he] was convicted," because the phrase "Federal or State law" "renders Texas law controlling." *Id*. In its ambiguity determination, the court in *Shipper* reasoned that the "Fifth Circuit and Supreme Court consider 'convicted[,]' without more, ambiguous enough for agency deference." *Id*. (citing *Martinez-Montoya v. I.N.S.*, 904 F.2d 1018, 1024 (5th Cir. 1990) (deferring to an agency interpretation of "convicted").

Both the Secretary in the instant case and the *Shipper* court noted that in relation to gun control statutes, the United States Supreme Court in *Dickerson v. New Banner Institute, Inc.* held that

> [w]hether one has been "convicted" within the language of the gun control statutes is necessarily ... a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State. This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of "conviction."

*Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 112 (1983), superseded by statute as stated in *Logan v. United States*, 552 U.S. 23 (2007).

Further, the Court has held:

> A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive.... [T]he

court has nothing to do but give judgment and sentence.

*Kercheval v. United States*, 274 U.S. 220, 223 (1927). Instead of simply applying its own definition to the word "convicted" in isolation, the Court turned to the statute's greater context. *United States v. Mills*, 843 F.3d 210, 215 (5th Cir. 2016).5 The broader context of "convicted" must be considered here as well.6 *Id.*

*Shipper, P.A.*, 2019 WL 1029118, at *5.

Just as Plaintiff argues in the instant action, the *Shipper* plaintiff directed the court "to the provision 'convicted under Federal or State law' and appear[ed] to argue [that] the inclusion of 'or State' would be superfluous if federal law was the only scheme to control the definition of 'convicted.'" *Id.*; *see* Dkt. No. 19 at 12-13.

However, such a reading ignores another reasonable interpretation: that "or State" is added so a state offense is incorporated even if the interpretation of that offense is left to the federal agency. *See Dickerson*, 460 U.S. at 112 (noting a conviction may be interpreted by federal law even if the predicate offense and punishment are defined by state law). To the extent Plaintiff simply argues the use of "or" is controlling, such a reading contradicts the normal interpretation of "or" as disjunctive. *See* [*Levesque v. Lynch*, 802 F.3d 152, 153-54 (1st Cir. 2015)] (explaining distinct uses of "and" and "or" in statutory interpretation). A disjunctive phrase does not require both federal and state law to consider the adjudication a conviction. *Id.*

Further, the judiciary presumes federal law controls the interpretation of federal statutes. *Yanez-Popp v. I.N.S.*, 998 F.2d 231, 236 (4th Cir. 1993) ("federal law governs the application of Congressional statutes in the absence of plain language to the contrary."). Thus, courts usually require explicit language from Congress relinquishing to a state interpretation of federal law. *United States v. Caicedo-Cuero*, 312 F.3d 697, 702 n.32 (5th Cir. 2002). Congress is aware of this presumption against state law control of federal statutes. *Logan*, 552 U.S. at 35-36. In fact, Congress is even aware of the inherent ambiguity of using "Federal or State" in isolation, and has, in other statutes, included additional specificity when it wished the applicable legal scheme to control. *E.g.* 21 U.S.C. § 802(13) (" 'felony' means any Federal or State offense classified

by applicable Federal or State law as a felony.") (emphasis added). The absence of any specificity one way or the other counsels in favor of ambiguity. [*Moosa v. I.N.S.*, 171 F.3d 994, 1008 (5th Cir. 1999)].

The broader context does not shed any light on Congress' intent. Other parts of Chapter 7, such as 42 U.S.C. § 1320a-7, define conviction to include deferred adjudication, but only internally. 42 U.S.C. § 1320a-7(i)(3) & (4). Courts often presume a word possesses the same meaning throughout an act, but inclusion of limiting language and absence of a specific statutory definition in the Medicare Act counsels against such a presumption. *Moosa*, 171 F.3d at 1008. Alternatively, the provision's origin – the Balanced Budget Act of 1997 – does not betray any stated intent behind the language. H.R. Rep. No. 105-217 at 121 (1997). Despite the Act's formidable history, the provision does not appear to be debated. *Id*.

It is noteworthy that the terms at issue appear amidst a tremendous grant of discretion to the Secretary. 42 U.S.C. § 1395cc(b)(2)(D). Congress, by the language of § 1395cc(b)(2)(D), allowed the Secretary singular discretion to revoke providers whose felonious conduct he deems detrimental to the program. This apparent federal objective—ensuring Medicare providers guilty of felonies are removed as providers if the Secretary deems the felony detrimental to Medicare—would be thwarted by a rule that some providers are outside the Secretary's authority by virtue of living in a state with greater deferred adjudication opportunities than its neighbor. *See Athens Cellular, Inc. v. Oconee County, Georgia*, 886 F.3d 1094, 1106 (11th Cir. 2018) (rejecting an interpretation obstructing the overall goal of the legislation at issue). The federal government's federal statute is more fairly read to apply to all federal citizens equally. *Id*.

In sum, "convicted" by its terms, by its context, and by its history and objectives is subject to more than one reasonable interpretation. 42 U.S.C. § 1395cc(b)(2)(D). Neither Congress nor the Judiciary consistently interpret the term "convicted" and courts by default consider the greater context in defining the term. [*United States v. Mills*, 843 F.3d 210, 215 (5th Cir. 2016)]. The context of "convicted" does not resolve the matter, as, without more, "under Federal or State law" does not specify which controls in the event of contradiction. [*United States v. Caicedo-Cuero*, 312 F.3d 697, 702 n.32 (5th Cir. 2012)]. Finally, in context of Congress' apparent objectives, a reading of "convicted" to protect providers living in states with deferred adjudication programs would frustrate the statute's purpose. *Athens Cellular*, 886 F.3d at 1106.

*Shipper, P.A.*, 2019 WL 1029118, at \*5-\*6.

The undersigned joins in the *Shipper* court's reasoning, and based on the "conflicting presumptions and competing policy objectives," believes the provision to be ambiguous, leaving room for "agency interpretation under *Chevron* step one." *Id.*

    B.    <u>*Chevron* Step Two</u>

Under *Chevron*, the second step the Court undertakes is to ascertain whether the Agency's interpretation was reasonable. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servcs.*, 545 U.S. 967, 997 (2005).

> The agency's interpretation needs only be reasonable: "not necessarily the only possible interpretation, nor even the interpretation deemed most reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009). Indeed, a mere disagreement in interpretation does not merit overruling the agency's otherwise-reasonable construal. *City of Arlington*, 569 U.S. at 318. Instead, the ultimate question is whether the agency's interpretation is within the ambiguity left by Congress. *Chevron*, 467 U.S. at 866. This means the interpretation must rationally choose between competing policy interests and effectuate an apparent objective of Congress. *Id.*; *Buffalo Marine Servcs., Inc. v. United States*, 663 F.3d 750, 757 (5th Cir. 2011). The Secretary's decision under this step will therefore be upheld unless so "implausible that it could not be ascribed to a difference in view or the product of agency expertise." [*Sunshine Haven Nursing Operations, LLC v. U.S. Dep't of Health & Human Servs., Centers for Medicare & Medicaid Servs.*, 742 F.3d 1239, 1252 (10th Cir. 2014)].

*Shipper, P.A.*, 2019 WL 1029118, at \*7.

Here, the Secretary avers that "Congress specifically chose to delegate to the Agency the regulatory authority to determine whether the provider was convicted of a qualifying offense." Dkt. No. 23 at 11. He argues that the meaning of "convicted" is "defined by federal law," since the plain language of 42 U.S.C. § 1395cc(b)(2)(D) links

the phrase "under Federal or State law" to the noun immediately preceding it – 'felony,' not to the word 'convicted,' so that the predicate offense must constitute a felony under either State or Federal law. *Id.* at 12. Plaintiff contends that this accords with the Supreme Court in *Dickerson*, 460 U.S. at 111-12, that held that the definition of convicted was a "federal, not state law [question], despite the fact that the predicate offense and its punishment are defined by the law of the State. This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of 'conviction.'" *Id.*

The Secretary argues that its interpretation of "conviction" that includes "deferred adjudications of guilty pleas ensures uniformity in how convictions are treated for all Medicare enrollment purposes, aligning *revocation* of enrollment with *exclusion* from Medicare." Dkt. No. 23 at 13 (emphasis added). "[T]he Secretary's interpretation [in aligning the *revocation* definition of 'conviction' with that in *exclusion* statute 42 U.S.C. § 1320a-7(i)] promotes a uniform definition of 'convicted' throughout Title 42 – a preferable statutory construction." *Shipper, P.A.*, 2019 WL 1029118, at *7 (quoting *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1142 (9th Cir. 2002)).

> Further, the Supreme Court repeatedly emphasized, absent Congressional statement to the contrary, federal statutes should be interpreted to promote greater national uniformity rather than "a national patchwork." *Logan*, 552 U.S. at 27 (quotation marks omitted); *see also Mills*, 843 F.3d at 214 ("This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of 'conviction.' ") (quotation marks omitted). Thirty-seven states provide some form of deferred adjudication. *Love, Gaines & Osborne, Forgiving and Forgetting in American Justice, A 50-State Guide to Expungement and Restoration of Rights* 13 (2017). These programs vary from deferral

for repeat offenders admitting all but the most significant felonies, such as in New York, Washington, and Texas, down to minor or drug offenses only being eligible, as in New Jersey, South Carolina, and Virginia. *Id.* at 13-14. Individuals in California, Alabama, or West Virginia receive no deferred adjudication opportunity at all. *Id.* Against this patchwork, the Secretary may reasonably conclude it preferable to treat all providers equally, regardless of the legal benefits of their state. *Mills*, 843 F.3d at 214. Such a policy choice is within the agency's discretion. *Chevron*, 467 U.S. at 845.

Further still, not only does the Secretary's definition promote uniformity in Title 42 and across the country, the interpretation is consistent with judicial presumptions. *Yanez-Popp*, 998 F.2d at 236. "[F]ederal law governs the application of federal legislation in the absence of clear language to the contrary." *United States v. Valdez-Valdez*, 143 F.3d 196, 200 (5th Cir. 1998) (citing *Wilson v. I.N.S.*, 43 F.3d 211, 214-15 (5th Cir. 1995) ) (in explanatory parenthetical). Courts will not interpret a federal statute against the varying quirks of states' laws absent explicit direction from Congress to do so. *Id.* More simply, federal statutes are not beholden to state definitions unless Congress wills it so. Const. art. VI, cl. 2; *Yanez-Popp*, 998 F.2d at 236. The Secretary's interpretation reasonably adopts this judicial presumption.

*Shipper, P.A.*, 2019 WL 1029118, at *7.

Accordingly, since 42 U.S.C. §1395cc(b)(2)(D) was found to be sufficiently ambiguous under the first step of *Chevron*, and, for the reasons explained above, the Secretary's interpretation was reasonable under the second step, the Secretary's interpretation should be accepted.

## IV.    Retroactive application of 42 C.F.R. § 424.353(a)(3) and due process

Plaintiff argues that, even if "the amendment incorporating the definition of 'convicted' under 42 C.F.R. § 1001.2 did not conflict with the Medicare statute, applying it here is impermissible retroactive application of the regulation, and it violates Due Process of Law." AR at 14. He argues that Due Process requires fair notice of agency

interpretations, *see Christopher v. Smithkline Beecham Corp.* 567 U.S. 142, 154 (2012), and asserts that, since "[r]etroactivity is not favored in the law ... and will not be construe to have retroactive effect unless their language requires this result," its application here is misplaced because "nothing in this regulation warrants a retroactive application of the amendment incorporating this definition of 'convicted' from the exclusion statute," AR 14-15. "[T]he regulation clearly attaches new legal consequences to Plaintiff's deferred adjudication," and "[a]pplying the amendment incorporating the definition of convicted under 42 C.F.R. § 1001.2 here violates fair notice and is an impermissible retroactive application of the regulation in violation of Due Process of Law." AR at 15.

The Supreme Court has held that an agency "is not precluded from announcing new principles in an adjudicative proceeding and ... the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion." *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 294 (1974). As the *Yanez-Popp* court noted, "rulemaking through adjudication rather than rulemaking" is appropriate except "where liability is premised on 'past actions which were taken in good faith reliance on Board pronouncements.'" 998 F.2d at 236 (quoting *Bell Aerospace*, 416 U.S. at 295).

In 1988, the Board of Immigration Appeals' decision in *Matter of Ozkok*, 19 I. & N. Dec. 546, 546 (BIA 1988) "changed over thirty years of INS and Board precedent which looked, in part, to state law in determining whether a conviction is final for immigration purposes." *Yanez-Popp*, 998 F.2d at 234. In its place, the BIA "established

a three part test to determine whether a conviction is sufficiently final for immigration purposes." *Id.* However, in 1993, the court in *Yanez-Popp* held that the petitioner failed to assert that he relied on any pre-*Ozkok* decisions which found that no "conviction" for immigration purposes existed where a state entered a "deferred adjudication" that it did not consider a conviction for any purpose under state law." *Id.*

Here, just as in *Yanez-Popp*, Plaintiff has not proffered evidence to show that he acted in good faith reliance on Secretary's 2013 interpretation of "conviction" when submitting his revalidation application. He has not shown that he submitted his application relying on the Agency's 2013-articulated definition of conviction. "'In light of these facts, the record does not suggest the Secretary committed any logical error or overlooked evidence contrary to its result.'" *Shipper, P.A.*, 2019 WL 1029118, at *8 (quoting *North Am. Telecomm. Ass'n*, 772 F.2d at 1289).

As such, because the decision to revoke Plaintiff's Medicare billing privileges was based on the correct legal standards and "'substantial evidence, the decision of the Secretary is conclusive and must be affirmed.'" *Sid Peterson Mem'l Hosp.*, 274 F.3d at 311 (quoting *Richardson,* 402 U.S. at 391). Accordingly, Plaintiff's Motion for Summary Judgment must be denied, and Defendant's motion must be granted.

### Recommendation

For the reasons explained above, the Court should deny Plaintiff's Motion for Summary Judgment [Dkt. No. 18], grant Defendant's Motion for Summary Judgment [Dkt. No. 21], and dismiss all claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 15, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE